1

2

3

4

5

6

7

8              IN THE UNITED STATES DISTRICT COURT

9            FOR THE EASTERN DISTRICT OF CALIFORNIA

10   GALINA BEZINSKAYA,

11          Plaintiff,                    No. 2:10-cv-01150-GGH (TEMP)

12       vs.

13
    MICHAEL J. ASTRUE, Commissioner of
14   Social Security,

15          Defendant.                    ORDER
    _____/
16

17          Plaintiff seeks judicial review of a final decision of the Commissioner of Social

18   Security ("Commissioner") denying her application for Supplemental Security Income ("SSI")

19   under Title XVI of the Social Security Act ("Act").  For the reasons that follow, plaintiff's

20   Motion for Summary Judgment is GRANTED, the Commissioner's Cross Motion for Summary

21   Judgment is DENIED, this matter is remanded to the Commissioner for payment of benefits, and

22   judgment is entered for the plaintiff pursuant to sentence four of 42 U.S.C. § 405(g).

23   BACKGROUND

24          Plaintiff, born January 11, 1960, applied on April 23, 2007 for SSI alleging that

25   she became disabled on September 20, 2006 (Tr. at 22, 45, 49, 94.)  Plaintiff contended she was

26   unable to work due to lower back pain radiating to her left leg.  (Tr. at 24, 258.)

1

1    In a decision dated March 25, 2009, Administrative Law Judge ("ALJ") L. Kalei

2  Fong determined plaintiff was not disabled.  The ALJ made the following findings:[1]

3         1.    The claimant has not engaged in substantial gainful activity
                since April 23, 2007, the SSI application date (20 CFR
4               416.971 *et seq.*) (Exhibit 2D).

5         2.    The claimant has the following severe impairment[s]:
                degenerative disc disease in the lumbar spine, and obesity
6               (20 CFR 416.921 *et seq.*).

7         3.    The claimant does not have an impairment or combination
                of impairments that meets or medically equals one of the
8               listed impairments in 20 CFR Part 404, Subpart P,
                Appendix 1 (20 CFR 416.925 and 416.926).
9

          4.    After careful consideration of the entire record, the
10              undersigned finds that the claimant has the residual
                functional capacity to perform light work [sic] as defined in
11              20 CFR 416.967(b).  She could lift and carry 50 pounds

12

_____

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the
13  Social Security program.  42 U.S.C. § 401 et seq.   Supplemental Security Income is paid to
    disabled persons with low income.  42 U.S.C. § 1382 et seq.  Both provisions define disability, in
14  part, as an "inability to engage in any substantial gainful activity" due to "a medically
    determinable physical or mental impairment. . . ."  42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A).
15  A parallel five-step sequential evaluation governs eligibility for benefits under both programs.
    See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S.
16  137, 140-42, 107 S. Ct. 2287 (1987).  The following summarizes the sequential evaluation:
                Step one:  Is the claimant engaging in substantial gainful
17      activity?  If so, the claimant is found not disabled.  If not, proceed
        to step two.
18              Step two:  Does the claimant have a "severe" impairment?
        If so, proceed to step three.  If not, then a finding of not disabled is
19      appropriate.
                Step three:  Does the claimant's impairment or combination
20      of impairments meet or equal an impairment listed in 20 C.F.R., Pt.
        404, Subpt. P, App.1?  If so, the claimant is automatically
21      determined disabled.  If not, proceed to step four.
                Step four:  Is the claimant capable of performing his past
22      work?  If so, the claimant is not disabled.  If not, proceed to step
        five.
23              Step five:  Does the claimant have the residual functional
        capacity to perform any other work?  If so, the claimant is not
24      disabled.  If not, the claimant is disabled.
    Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).
25      The claimant bears the burden of proof in the first four steps of the sequential evaluation
    process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the
26  burden if the sequential evaluation process proceeds to step five.  Id.

occasionally and 25 pounds frequently. She could sit for 6 hours, stand and/or walk (with breaks) for 6 hours during an 8-hour workday. She would be unrestricted in performing pushing and/or pulling activities with her upper and lower extremities. She would be able to perform postural activities occasionally. She would have no manipulative, visual, or communicative (except her inability to converse in English) limitations and she would not have any environmental limitations (Exhibit 3F). The undersigned notes that this RFC for medium exertional work allows for the performance of light exertional work.

5. The claimant has no past relevant work (20 CFR 416.965).

6. The claimant was born on January 11, 1960 and was 47 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. The claimant has at least a high school education and is not able to communicate in English (20 CFR 416.964).

8. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969a).

10. The claimant has not been under a disability, as defined in the Social Security Act, since April 23, 2007, the date the application was filed (20 CFR § 416.920(g)).

(Tr. at 11-18.)

ISSUES PRESENTED

Plaintiff has raised the following issues[2]: A. Whether the ALJ Rejected the

Opinion of the Treating Physician Without a Legitimate Reason; B. Whether the ALJ Improperly

Discredited Plaintiff's Testimony; and C. Whether the ALJ Improperly Relied On the Vocational

_____

[2] In her motion for summary judgment, plaintiff raises these same issues in an order that is counterintuitive to the five-step sequential evaluation governing eligibility for benefits. (Pl.'s Mot. at 5.) Accordingly, the court sets forth the issues in an order that more readily comports with the sequential evaluation.

1  Expert Testimony.[3]

2  LEGAL STANDARDS

3          The court reviews the Commissioner's decision to determine whether (1) it is

4  based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in

5  the record as a whole supports it.  Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir.1999).

6  Substantial evidence is more than a mere scintilla, but less than a preponderance.  Connett v.

7  Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted).  It means "such relevant evidence

8  as a reasonable mind might accept as adequate to support a conclusion."  Orn v. Astrue, 495 F.3d

9  625, 630 (9th Cir. 2007), *quoting* Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).  "The

10  ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and

11  resolving ambiguities."  Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citations

12  omitted).  "The court will uphold the ALJ's conclusion when the evidence is susceptible to more

13  than one rational interpretation."  Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

14  ANALYSIS

15          A.  Whether the ALJ Rejected the Opinion of the Treating Physician Without a

16  Legitimate Reason

17          Plaintiff alleges that the opinion of her treating physician, Dr. Arnold Greenberg,

18  was improperly rejected by the ALJ.  In particular, plaintiff contends that the ALJ erred in

19  rejecting Dr. Greenberg's functional capacity opinion and diagnosis of radiculopathy[4] based on a

20

---

21          [3] The court notes that plaintiff's counsel has employed sarcasm and ad hominem
comments regarding the ALJ and defendant's counsel in his briefing.  (See e.g. Pl's Reply at 6
22  n.5-6, 7 n.7, 9, 10 n.11, 12-13.)  Such comments are in poor taste and counterproductive to the
objective of persuasion.
23
          [4] Radiculopathy or radicular pain "is a type of pain that radiates into the lower extremity
24  directly along the course of a spinal nerve root.  Radicular pain is caused by compression,
inflammation and/or injury to a spinal nerve root arising from common conditions including
25  herniated disc, foraminal stenosis and peridural fibrosis.  Leg pain can be accompanied by
numbness and tingling, muscle weakness, and loss of reflexes.  The most common symptom of
26  radicular pain is usually called sciatica or sometimes radiculopathy, which is pain that radiates

4

1   consultative examiner's failure to find clinical evidence of radiculopathy during his physical

2   examination.

3          The weight given to medical opinions depends in part on whether they are

4   proffered by treating, examining, or non-examining professionals.  Holohan v. Massanari, 246

5   F.3d 1195, 1201-02 (9th Cir. 2001); Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).[5]

6   Ordinarily, more weight is given to the opinion of a treating professional, who has a greater

7   opportunity to know and observe the patient as an individual.  Id.; Smolen v. Chater, 80 F.3d

8   1273, 1285 (9th Cir. 1996).

9          To evaluate whether an ALJ properly rejected a medical opinion, in addition to

10  considering its source, the court considers whether (1) contradictory opinions are in the record;

11  and (2) clinical findings support the opinions.  An ALJ may reject an *uncontradicted* opinion of a

12  treating or examining medical professional only for *"clear and convincing"* reasons.  Lester, 81

13  F.3d at 830-31.  In contrast, a *contradicted* opinion of a treating or examining professional may

14  be rejected for *"specific and legitimate"* reasons.  Lester, 81 F.3d at 830.  While a treating

15  professional's opinion generally is accorded superior weight, if it is contradicted by a supported

16  examining professional's opinion (supported by different independent clinical findings), the ALJ

17  may resolve the conflict.  Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (citing

18  Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  The regulations require the ALJ to

19

20  along the sciatic nerve down the back of the thigh and sometimes into the calf and foot.
    Radicular pain can be effectively treated conservatively (non-surgically) with physical therapy,
    medications and epidural injections.  If conservative treatments fail, decompressive surgery, such
21  as a laminectomy or discectomy, may alleviate radicular pain."  See *Radicular Pain and
    Radiculopathy Definition*, http://www.spine-health.com/glossary/r/radicular-pain-and-
22  radiculopathy.

23          [5] The regulations differentiate between opinions from "acceptable medical sources" and
    "other sources."  See 20 C.F.R. §§ 404.1513(a), (e); 416.913(a), (e).  For example, licensed
24  psychologists are considered "acceptable medical sources," and social workers are considered
    "other sources."  Id.  Medical opinions from "acceptable medical sources" have the same status
25  when assessing weight.  See 20 C.F.R. §§ 404.1527(a)(2), (d); 416.927(a)(2), (d).  No specific
    regulations exist for weighing opinions from "other sources."  Opinions from "other sources"
26  accordingly are given less weight than opinions from "acceptable medical sources."

1   weigh the contradicted treating physician opinion, Edlund, 253 F.3d at 1157,[6] except that the ALJ

2   in any event need not give it any weight if it is conclusory and supported by minimal clinical

3   findings.  Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (treating physician's conclusory,

4   minimally supported opinion rejected); see also Magallanes, 881 F.2d at 751.  The opinion of a

5   non-examining professional, without other evidence, is insufficient to reject the opinion of a

6   treating or examining professional.  Lester, 81 F.3d at 831.

7                    In this case, plaintiff's treating neurologist, Dr. Greenberg, first started seeing

8   plaintiff in October 2006.  (Tr. at 26, 186-87.)  During an October 14, 2006 physical

9   examination, Dr. Greenberg found tenderness on palpation of the sciatic nerve and an antalgic

10  gait.  (Tr. at 182, 184.)  That same day, x-rays taken of the lumbar spine showed "moderate left

11  convex lumbar scoliosis."  (Tr. at 199.)  On November 11, 2006, Dr. Greenberg performed nerve

12  conduction studies and an electromyogram ("EMG") from which he diagnosed plaintiff with left

13  L5 radiculopathy.  (Tr. at 200-06.)  Subsequently, on February 26, 2007, Dr. Greenberg also

14  ordered an MRI of the lumbar spine.  (Tr. at 193.)  The MRI report stated:

15              L5-S1 shows moderate degenerative disc disease.  A moderate
            sized broad based protrusion is present which is asymmetric
16          towards the left.  This extends into the neural foramina while it
            causes moderate neural foraminal encroachment with mild
17          effacement on the exiting left L4 nerve root against its
            corresponding pedicle and lamina.  Mild facet disease also
18          contributes to neural foraminal stenosis.

19  (Tr. at 193.)  The MRI also revealed mild degenerative disc disease at L1-2 with mild spondylitic

20  bulging, and moderate desiccation of the disc at L4-5 with mild facet arthropathy.  (Tr. at 193.)

21  In his April 21, 2007 functional capacity assessment, citing the results from the MRI, EMG, and

22  nerve conduction studies as well as plaintiff's clinical picture, Dr. Greenberg stated a principal

23  diagnosis of left L5 radiculopathy with a secondary diagnosis of low back pain and degenerative

24  _____

25          [6]  The factors include: (1) length of the treatment relationship; (2) frequency of
    examination; (3) nature and extent of the treatment relationship; (4) supportability of diagnosis;
26  (5) consistency; (6) specialization. 20 C.F.R. § 404.1527.

1    disc disease.  (Tr. at 257-60.)   He assessed plaintiff as partially restricted in climbing and

2    bending, and capable of sitting for 2-4 hours total daily (1-2 hours without interruption), standing

3    and walking for 1-2 hours total daily (less than 1 hour without interruption), and lifting and

4    carrying less than 5 pounds occasionally.  (Tr. at 257-58.)  Based on these restrictions and noting

5    plaintiff's low back pain radiating to her left leg, he limited plaintiff to less than the full range of

6    sedentary work (Tr. at 258-60.)  He did not expect improvement based on plaintiff's long, 10-

7    year history with her condition.  (Tr. at 257, 259.)

8             Subsequently, on July 20, 2007, plaintiff attended a consultative orthopedic

9    evaluation by Dr. Rajeswari Kumar.  (Tr. at 207-14.)  During the physical examination,

10   plaintiff's gait was non-antalgic and her posture normal, and she used no assistive devices.  (Tr.

11   at 208-09, 211.)  Her motor strength was 5/5 in the upper and lower extremities with normal

12   sensation and reflexes.  (Tr. at 210-11.)  Her seated straight leg raising test was negative.  (Tr. at

13   209.)   Although Dr. Kumar noted tenderness in the lower lumbar paraspinal region and a

14   restricted range of motion in the lumbar spine, he found no clinical evidence of radiculopathy.

15   (Tr. at 209, 211.)  He diagnosed plaintiff with chronic low back pain and probable lumbar

16   spondylosis.  (Tr. at 211.)   Based upon his physical examination, Dr. Kumar concluded that

17   plaintiff was able to perform medium exertional work.  (Tr. at 14, 211.)  She could lift and carry

18   50 pounds occasionally and 25 pounds frequently, do frequent bending and stooping activities,

19   stand and walk for 6 hours without an assistive device (with routine breaks), and sit, kneel, or

20   climb without restriction.  (Tr. at 211.)

21            The two State Agency physicians who reviewed plaintiff's records essentially

22   adopted Dr. Kumar's findings.  (Tr. at 14, 215-21, 245-51.)  State agency physician Dr. Beig's

23   July 31, 2007 assessment noted that Dr. Kumar's clinical evaluation showed "no evidence of

24   definite radiculopathy" and that plaintiff's gait was within normal limits.  (Tr. at 216.)  Dr. Beig

25   imposed essentially the same limitations for medium work as Dr. Kumar  (Tr. at 211, 216-17.)

26   State Agency physician Dr. Dipsia's December 10, 2007 assessment, which the ALJ ultimately

1    followed, was similar, except that Dr. Dipsia imposed additional postural limitations.[7]  (Tr. at

2    246-47.)

3            The ALJ rejected Dr. Greenberg's RFC assessment based on the above findings

4    by Dr. Kumar and the State Agency physicians, stating:

5               [Dr. Greenberg, plaintiff's treating physician,] limited her to less
               than sedentary work activity primarily due to her 10-year history of
6               low back impairment with moderate pain.  He also noted that her
               pain radiated to her left leg...Dr. Greenberg's restricted assessment
7               is not supported by the objective medical evidence.  Dr. Kumar
               examined the claimant and found no evidence of radiculopathy.  In
8               fact, Dr. Kumar found the claimant capable of performing medium
               exertional work.  Dr. Greenberg found that the claimant's
9               impairment began ten years past, well before he began treating her.
               His findings are based greatly upon her subjective complaints of
10              pain.  His findings are contradicted by Dr. Kumar's physical
               examination which was in turn supported by other evidence in the
11              record.

12   (Tr. at 14-15.)

13           Although the ALJ suggested that Dr. Greenberg's findings were "based greatly" on

14   plaintiff's subjective complaints and not supported by objective evidence (tr. at 15), the record

15   shows that his diagnosis of radiculopathy was based on his clinical findings during approximately

16   10 appointments as of April 21, 2007 (tr. at 172-206), the nerve conduction studies and EMG (tr.

17   at 200-06), and the MRI which showed a moderate sized broad based protrusion at L5-S1 with

18   moderate left neural foraminal stenosis.  (Tr. at 14, 193.)  Foraminal stenosis is one of the

19   potential causes of radiculopathy.  See Radicular Pain and Radiculopathy Definition,

20   http://www.spine-health.com/glossary/r/radicular-pain-and-radiculopathy.  Accordingly, Dr.

21   Greenberg's opinion is not conclusory or minimally supported, see Meanel, 172 F.3d at 1114, and

22   is thus entitled to appropriate deference under the treating physician rule.   Smolen, 80 F.3d at

23   1285; SSR 99-2p, at *7.

24           Even though a treating professional's opinion is generally accorded superior

25   _____

26      [7]  Dr. Dipsia stated that plaintiff could occasionally climb, balance, stoop, kneel, crouch,
     and crawl.  (Tr. at 247.)  Dr. Beig imposed no postural limitations.  (Tr. at 216-17.)

1 weight, if it is contradicted by an examining professional's opinion supported by different

2 independent clinical findings, the ALJ may resolve the conflict. Andrews v. Shalala, 53 F.3d

3 1035, 1041 (9th Cir. 1995) (citing Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989)).  Of

4 course, the ALJ must provide specific and legitimate reasons for rejecting the treating physician's

5 opinion. Lester, 81 F.3d at 830.  Here, the examining physician, Dr. Kumar, made some

6 independent clinical findings to support his contradictory opinion that plaintiff did not suffer from

7 radiculopathy.  According to his examination, her gait was non-antalgic and her posture, motor

8 strength, sensation, and reflexes were normal.  Her seated straight leg raising test was negative,

9 and he found no clinical evidence of radiculopathy.  (Tr. at 208-11.)

10        However, the problem with the ALJ's reliance on Dr. Kumar's opinion is that Dr.

11 Kumar did not have the benefit of plaintiff's prior medical records, including results from the x-

12 rays, nerve conduction studies, EMG, and MRI.  (Tr. at 207.)  These tests were conducted in 2006

13 and early 2007 and the records were presumably available by the time of Dr. Kumar's evaluation

14 on July 20, 2007, but for some reason he did not have access to them.  (Tr. at 207.)  The

15 regulations require that a consultative examiner be given any necessary background information

16 about the plaintiff's condition.  20 C.F.R. § 404.1517.  Background information is essential

17 because consultative exams are utilized "to try to resolve a conflict or ambiguity if one exists."  20

18 C.F.R. § 404.1519a(a)(2).  An opinion on a long-standing medical problem given after only a one-

19 shot examination, *without recourse to the prior medical records*, is not one which can generally

20 be relied upon.  This is especially true when the medical records contain results from multiple

21 objective tests that the treating physician used to support his opinion.

22        Furthermore, although the State Agency physicians indicated that they had

23 reviewed plaintiff's medical records (tr. at 216, 220, 250), they did not have the opportunity to

24 examine plaintiff and appear to have relied to a large extent on consultant Dr. Kumar's physical

25 examination.  (See e.g. Tr. at 216 (noting that clinical evaluator found "no evidence of definite

26 radiculopathy").)  They do not address the results from the x-rays, nerve conduction studies,

9

1   EMG, or MRI relied upon by Dr. Greenberg,[8] nor do they explain why their conclusions based on

2   these tests are different.  In any event, the opinion of a nonexamining physician cannot by itself

3   constitute substantial evidence justifying rejection of the treating physician's opinion.  Lester, 81

4   F.3d at 831.

5          In sum, the ALJ's reasons for rejecting Dr. Greenberg's opinion are not supported

6   by substantial evidence.  Accordingly, the court must determine whether the case should be

7   remanded for further proceedings or an award of benefits, a decision within the discretion of the

8   court.  Smolen, 80 F.3d at 1292.  An award of benefits is appropriate where "no useful purpose

9   would be served by further administrative proceedings" and "the record has been thoroughly

10  developed."  Varney v. Sec'y of Health & Human Servs., 859 F.2d 1396, 1399 (9th Cir. 1988).

11  This is a recognition of the "need to expedite disability claims."  Id. at 1401.  Generally, where the

12  ALJ fails to provide adequate reasons for rejecting the opinion of a treating physician, the opinion

13  is credited as a matter of law.  Lester, 81 F.3d at 834.  Here, if the treating physician's opinion is

14  credited, plaintiff's restrictions would render her disabled.  It is obvious that very few, if any,

15  employers would be able to employ an individual only capable of sitting for 2-4 hours total daily

16  (1-2 hours without interruption), standing and walking for 1-2 hours total daily (less than 1 hour

17  without interruption), and lifting and carrying less than 5 pounds occasionally.  Therefore, remand

18  for an award of benefits is appropriate.  In light of this conclusion, the court need not address or

19  decide the remaining issues raised by plaintiff.[9]

20

21      [8] SA Dr. Beig briefly referred to the MRI of the spine as showing mild degenerative disc
    disease. (Tr. at 216.)  He entirely omits large parts of the MRI report, including a finding of
22  moderate sized broad based protrusion at L5-S1 with moderate left neural foraminal stenosis.
    (Tr. at 193.)  SA Dr. Dipsia merely noted, without further detail, that additional objective
23  information received does not support reversal of the prior decision. (Tr. at 251.)

24      [9] The court notes, however, that some of the ALJ's reasons for discounting plaintiff's
    credibility, including the fact that plaintiff entered the United States as a refugee and alleged
25  disability as of her arrival date, have only speculative bearing on her credibility.  Rather, the
    comment appears to be political in nature, and relates to an issue that is up to Congress and the
26  Executive Branch to address if deemed a problem.

1   CONCLUSION

2          Accordingly, IT IS ORDERED that plaintiff's Motion for Summary Judgment is

3   GRANTED, the Commissioner's Cross Motion for Summary Judgment is DENIED, this matter is

4   remanded to the Commissioner for payment of benefits, and judgment is entered for the plaintiff

5   pursuant to sentence four of 42 U.S.C. § 405(g).

6   DATED: September 19, 2011

7                                            /s/ Gregory G. Hollows
                                          UNITED STATES MAGISTRATE JUDGE

8
    GGH/wvr
9   Bezinskaya.1150.ss.wpd

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

                                                 11